IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NICHOLAS DAVIS,
Administrator for the Estates of
Ronald and Cynthia Lanton,

        Plaintiff,

    v.

OCWEN LOAN SERVICING, LLC,
et al.,

        Defendants.

:

:

:

:

Case No. 3:15-cv-372

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART THE MOTION FOR ATTORNEYS' FEES AND COSTS FILED BY
PLAINTIFF NICHOLAS DAVIS (DOC. #175)

---

This matter is before the Court on Plaintiff Nicholas Davis's ("Plaintiff's")
Motion for Attorneys' Fees. Doc. #175. This motion was supplemented by two
subsequent memoranda. Docs. #179 & 183. Defendants Ocwen Loan Servicing, LLC
et al ("Defendants") filed a memorandum contra, Doc. #185, and Plaintiff filed a
reply in support of his motion. Doc. #190. This issue is now ripe for review and for
the reasons set forth below, the Motion for Attorneys' Fees, Doc. #175, is
SUSTAINED IN PART and OVERRULED IN PART.

## I. Procedural and Factual Background

Ronald and Cynthia Lanton (the "Lantons") filed this lawsuit against their loan servicer, Ocwen Loan Servicing, and against U.S. Bank, as Ocwen's principal, for violations under the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, *et seq.* (Count One); the Fair Credit Reporting Act of 1970 ("FCRA"), 15 U.S.C. § 1681, *et seq.* (Counts Two and Three);[1] and the Fair Debt Collection Practices Act of 1977 ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Count Four); Breach of Contract (Count Five); and Tortious Interference with Business Relationship (Count Six). Doc. #42. Count Six was dismissed with prejudice on February 2, 2017. Doc. #66. Plaintiff's FCRA and FDCPA claims were dismissed by the Court after the conclusion of discovery. Doc. #116. After the Court directed the parties to submit supplemental briefing on the merits of the RESPA claim, two unforeseen events led to extended delays and additional briefing periods: the COVID-19 pandemic and the untimely passing of both Ronald and Cynthia Lanton.[2]

---

[1] The Second Count of the Third Amended Complaint asserted that Equifax Information Services, LLC, violated the FCRA. Doc. #42. This Defendant was later dismissed with prejudice. Docs. #71 & 73.

[2] Based on the Suggestion of Death on the Record, Doc. #135, Cynthia Lanton died on February 7, 2022, and Ronald Lanton died on September 4, 2022.

After verifying that the RESPA claim survived the death of Mr. and Mrs. Lanton, the Court permitted Nicholas Davis to be substituted as Party Plaintiff.[3] Doc. #145. After supplemental briefing, on May 7, 2024, the Court awarded summary judgment to Plaintiff on the RESPA claim. Doc. #164. Eventually, in late 2024, the parties agreed to a settlement, thereby ending all pending claims. The parties agreed to submit the issue of attorneys' fees to the Court for decision post-judgment.

## II. Legal Standard

Congress provided that a party who prevails in a RESPA case has the right to be awarded "reasonable attorneys fees."[4] 12 U.S.C. § 2607(d)(5). A party who attempts to use a federal fee-shifting mechanism like the one applicable to RESPA claims must show that they are entitled to the amount requested. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (citations omitted).

---

[3] Mr. Davis appeared as the administrator of the estates of both Cynthia Lanton and Ronald Lanton, appointed by Probate Court of Montgomery County, Ohio. Docs. #144 & 145.

[4] The Sixth Circuit has observed the surprising lack of consistency regarding references to "attorney fees," "attorneys fees," "attorney's fees," and "attorneys' fees." *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F. 3d 252, 253 n.1 (6th Cir. 1997) ("In federal statutes, rules and cases, we find these forms used interchangeably, nay, promiscuously. There is sometimes no consistency within even the same body of law."). In this case, the Court uses "attorneys' fees" when referring to the fees billed by multiple attorneys working on behalf of Plaintiff and uses the other forms only where quoting other authorities.

"A reasonable fee is 'one that is adequate to attract competent counsel, but does not produce windfalls to attorneys.'" *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (other quotations omitted)). In determining a reasonable fee, courts first multiply a reasonable hourly rate by the number of hours reasonably expended on the litigation. *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). This calculation is called the lodestar figure and "[t]here is a 'strong presumption' that this lodestar figure represents a reasonable fee." *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). The resulting figures can then be adjusted upward or downward based on a twelve-factor test adopted by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983).

To determine a reasonable hourly rate, courts should review "the prevailing market rate in the relevant community." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum*, 465 U.S. at 895). The Sixth Circuit grants trial courts discretion to set a reasonable hourly rate, but has cautioned courts to "provide an adequate explanation of the reasons for its award and the manner in which that award [is] determined." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).

The reasonable number of hours spent does not include those which are "excessive, redundant, or otherwise unnecessary, just as a lawyer in private

4

practice ethically is obligated to exclude such hours from his fee submission."

*Hensley*, 461 U.S. at 434. Where "a plaintiff has achieved only partial or limited

success, the product of hours reasonably expended on the litigation as a whole

times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at

436. In these cases, a court should begin by asking whether the successful and

unsuccessful claims are related. *Dowling v. Litton Loan Servicing LP*, 320 F. App'x

442, 448 (6th Cir. 2009) (citations omitted). Efforts expended only on unsuccessful

claims should not be included in an award of attorneys' fees. *Imwalle v. Reliance*

*Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008). However, where successful and

unsuccessful claims involve common facts or related legal theories such that they

are inextricably linked, the court "should focus on the significance of the overall

relief obtained by the plaintiff in relation to the hours reasonably expended on the

litigation." *Hensley*, 461 U.S. at 435.

III. **Analysis**

Plaintiff falls squarely into the category of parties for whom Congress

intended attorneys' fees to be available. The only remaining dispute between the

parties is the reasonable amount of attorneys' fees to be paid. In their primary

motion, Plaintiff argues that his request of $367,329.75 in attorneys' fees is

reasonable and should be awarded by the Court. Doc. #175, PageID #2459. At the

Court's direction, Plaintiff filed two supplements to the motion in which he clarifies which hours were related to the previously dismissed claims. Docs. #179 & 183.

Defendants do not argue against the awarding of fees but raise four points that they contend should properly be taken into account to reduce the amount of fees awarded. First, they point out that Plaintiff achieved only limited success, prevailing on only one claim. Doc. #185, PageID #2993–99. Second, they discuss how the death of the Lantons affects the right of counsel to be reimbursed. Doc. #185, PageID #3000–01. Third, they argue that some of the time expended was duplicative and excessive and should not be subject to an award of legal fees. Doc. #3001–05. Finally, they posit that fees stemming from a state court foreclosure suit are not compensable. Doc. #185, PageID #3006. The Court will first discuss each of these issues before making a final determination of the lodestar figure.

### A. Proportionality

Prior to discussing the issues presented by the parties, the Court will first turn to an issue the parties did not raise: proportionality between the damages awarded and attorney fees. The Court first notes that this is a separate issue from the one raised by Defendants in which they argue that limited success should result in limited fees. *See infra* Section III.B. Here, the question is whether a relatively minor damage award can or should result in a far greater award of attorneys' fees.

6

Congress has passed a number of statutes which permit a winning plaintiff to seek attorneys' fees. *See, e.g.,* The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988; The Whistleblower Protection Act of 1989, 5 U.S.C. § 1221; The Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2607. Often these statutes do not place a specific limit on the size of attorneys' fees, but Congress can, and has, exercised that power to identify guardrails in the past. *See, e.g.,* The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e(d)(2) (limiting attorneys' fees to 150% of monetary judgment). Notably, RESPA, the statute involved herein, contains no such limit on attorneys' fees in the statutory text.

As many courts have identified over the years, the reason Congress permits statutory attorneys' fees in some cases is to both promote effective access to the judicial system for potential plaintiffs to bring meritorious claims and incentivize attorneys to take on such claims. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Within this context, the Supreme Court of the United States has rejected the notion of strict proportionality, stating that "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain [counsel to seek] redress from the courts. This is totally inconsistent with Congress' purpose in enacting section

1988" *City of Riverside v. Rivera*, 477 U.S. 561 (1986).[5] Within the Sixth Circuit, "there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages." *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392 (6th Cir. 1995).

At the same time, "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded." *Rivera*, 477 U.S. at 574. It is clear, therefore, that proportionality is intended to be utilized as one factor among many, rather than a firm element to be met. But this, unfortunately, seems to be where the guidance ends. Courts are left to determine to what extent proportionality should be weighed against other factors, and at what level proportionality becomes an issue.[6] It is one scenario to have an attorney fee award that is relatively equal to the actual damages, but at some level the lack of

---

[5] Though many cases address attorneys' fees under non-RESPA statutes, the similar statutory structure indicates that similar interpretation is called for. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758–59 (1989) (stating that the "fee-shifting statutes' similar language is a strong indication that they are to be interpreted alike." (quotation omitted)).

[6] Many courts have permitted recovery of attorneys' fees many times larger than actual damages. *See, e.g., Rivera*, 477 U.S. at 564–65 (upholding an award of $245,456 when damages were $33,350); *Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir. 1988) (upholding an award of $21,100 when damages were $1,001); *Kassim v. City of Schenetady*, 415 F.3d 246, 252 (2nd Cir. 2005) (damages of $2,500 could justify fee award of $75,825); *United Auto. Workers Local 259 Social Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283 (3rd Cir. 2007) (affirming award of $35,305 when damages were $1,928).

proportionality must weigh more strongly, whether that is at 5, 25, or 250 times damages.

Without any guidance on the issue, but in the hope that some future case from the appellate level may provide additional clarification to courts attempting to navigate this complex issue, this Court will dutifully apply the relevant framework in determining an award of attorney's fees.

## B. Defendants' Arguments

As a guiding principle, district courts are instructed to exclude hours that were not "reasonably expended" in the course of litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Generally, this disqualifies any hours that are "excessive, redundant, or otherwise unnecessary." *Id.* Here, Defendants' first objection to the request for attorneys' fees is due to Plaintiff's relative level of success on the case. Plaintiff was successful in the RESPA claim, but was unsuccessful in bringing claims under FCRA, FDCPA, or for tortious interference.[7] Whether these unsuccessful claims may still permit an award of attorneys' fees is of paramount importance to the determination of the size of any award.

In *Hensley*, the Supreme Court of the United States explained:

_____

[7] At the time of the settlement, there was a pending claim for breach of contract for which the parties stipulated a dismissal with prejudice.

9

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). As interpreted by the Sixth Circuit, this requires an analysis of whether the successful claims and unsuccessful claims were based on the same "common core of facts." *Kidis v. Reid*, 976 F.3d 708, 721 (6th Cir. 2020) (citing *Hescott v. City of Saginaw*, 757 F.3d 518, 526 (6th Cir. 2014)). While Plaintiff's claims under FCRA and FDCPA were not ultimately successful, they were based on the same allegations involving Defendants' mishandling of the Lantons' loan. This is sufficient under the Sixth Circuit's practice to constitute "related" claims, justifying a full award of attorneys' fees.

Claim Five, the breach of contract claim is not, in itself, subject to fee shifting. *Stevens v. S.W.L.H.S. Inv. Partners*, 84 N.E.3d 224 (Ohio Ct. App. 2017). Claim Six, a claim for tortious interference, was dismissed by the Court relatively early on in this case, on February 15, 2017. Doc. #66. Both claims also stem from the same common nucleus of facts, and it would likely be difficult to determine which hours were expended on the RESPA claim and which were expended on these other claims. In such a case, counsel is not required to undertake a wasteful exercise.

10

*Hensley*, 461 U.S. at 435 ("Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.").

Following this Court's direction, Plaintiff examined their own fee log and identified entries relating only to claims that were dismissed, primarily claims against Equifax or stemming from losses incurred by Blue Ocean. These identified entries totaled $17,692.92. Because it is possible to excise these entries from the rest, the Court believes that these are properly excludable.

Defendants' second point is that the death of the Lantons prevents the award of attorneys' fees for work done after February 7, 2022, and before the attorneys were formally retained by the estate on February 27, 2024. Doc. #185, PageID #3000–01. This argument is unconvincing. Certainly, there was a period of time where Plaintiff's attorneys could no longer represent the Lantons but they had not yet been retained by the estate. When this was discovered, the Court vacated a Decision granting partial summary judgment to Plaintiff that had occurred during this period, reasoning that some of the briefing documents were improperly filed at the time. Doc. #159. In particular, a supplemental memorandum filed by Plaintiff in support of his Motion for Partial Summary Judgment was filed after the Lantons' death. Doc. #124. When the case's procedural hurdles had been sorted out, the Court ultimately granted partial summary judgment to Plaintiff once more. Doc. #164. In

11

making this decision, the Court considered Plaintiff's supplemental memorandum that had been drafted and filed after the Lantons' death. *Id.*

In his reply, Plaintiff cites *Fox* for the proposition that work advancing a case, even if it is mooted, is compensable if it would have been necessary later in the case. Doc. #190, PageID #3046; *Fox v. Vice*, 563 U.S. 826 (2011). *Fox* dealt with a defendant's right to fees incurred while defending against a plaintiff's frivolous claims. In discussing a theoretical case where there may be both frivolous and non-frivolous claims, the Court made it clear that the proper inquiry is not whether the costs related to the non-frivolous claim, it is whether the costs would have been incurred in the absence of the frivolous claims. *Fox*, 563 U.S. at 838.

Applying that principle to this case, the Court believes that the proper inquiry is to determine if the fees would have been incurred later in the litigation, if they had not been incurred when they were. One could imagine a less-scrupulous attorney trying to take advantage of a situation with no client to oversee work; incurring fees in exchange for work product that does not move the case along. In this scenario, it would likely be clear that the work done did not contribute to the case, and would not ever be relevant, thus preventing those fees from be compensable.

However, that is not this case. Here, there is no evidence presented that when Plaintiff's attorneys researched and drafted the supplemental memorandum, they

12

did so in bad faith. To the contrary, they continued to pursue the course of action they had been on prior to the death of the Lantons. The attorneys' work done in the intervening time after the Lantons' death was necessary to continue to prosecute the case at hand. Had the attorneys failed to do this work then, it would have been necessary further down the road.

Defendants also argue that the fee log submitted by Plaintiff is problematic for two reasons. First, the log appears to show "redundant work and time spent by new attorneys reviewing the file to get up to speed." Doc. #185, PageID #3002. The Court notes the lack of citation to any particular entries to support Defendants' argument. After reviewing the fee log, the Court does not see entries that appear to corroborate Defendant's claim that unnecessary time was spent as a result of eleven attorneys and three paralegals working on the case over its nine-year span. Understanding that the "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection," the Court disagrees with Defendants' first objection to the fee log. *Fox*, 563 U.S. at 838.

Defendants' second objection to the fee log is that it is inadequate by failing to provide sufficient detail regarding each entry and because it includes entries billing for internal meetings and communications within the firm. Doc. #185, PageID #3003–04. However, Plaintiff is not required to provide "explicitly detailed descriptions" of their hours. *Imwalle v. Reliance Medical Prods., Inc.*, 515 F.3d 531,

554 (6th Cir. 2008) (determining that entries such as "Conference with," "Research," "Review file," "Review documents," etc. were sufficient to be compensable.). Despite Defendants claims otherwise, the Court finds that the descriptions provided by Plaintiff here are sufficient to determine that the hours charged were actually and reasonably expended in the litigation. *See Imwalle*, 515 F.3d at 554.

Defendants make one final argument attacking the fees that Plaintiff claims. Here, they posit that the fees related to the separate foreclosure action should not be compensable as part of this case. Doc. #185, PageID #3006. In 2019, U.S. Bank, N.A., initiated foreclosure proceedings against the Lantons after they stopped making payments on their loan. According to Plaintiff, the proceeding was "triggered by false credit reporting to credit agencies." Doc. #179, PageID #2961. Defendants believe the proceeding occurred because "the Lantons voluntarily decided to cease making their required monthly mortgage payments to Ocwen in 2015." Doc. #185, PageID #3006. Regardless, the foreclosure suit was resolved and dismissed on November 5, 2020.

In a case seeking attorney's fees pursuant to a claim under 42 U.S.C. § 1988, the Sixth Circuit held that attorney fees expended in a separate proceeding are not recoverable. *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 631 (6th Cir. 2013). Despite Plaintiff's argument that the foreclosure suit was necessarily intertwined with this

14

case, the Court is convinced that the *Binta B.* principle applies in this case and does not permit recovery for fees expended in the foreclosure case.

### C. Calculation of Compensable Fees

Having argued many specific objections to Plaintiff's theory of attorneys' fees, Defendants do not present any argument against the rates charged by the various attorneys and paralegals working on the case. Nonetheless, the Court reviews these rates to ensure that they are reasonable. Plaintiff's motion lays out each person's experience, billing rate, and describes what the average market value billing rate is. Doc. #175, PageID #2466–73. Moreover, they have attached information compiled by the Ohio State Bar Association to help support their assertions. Doc. #175-5. After review, the Court finds that the rates charged by each attorney and paralegal were reasonable and commensurate with both their experience and the market in which they worked.

Likewise, the Court has reviewed the fee log provided as Exhibit C to the motion and approves corresponding fee awards for each item with only certain exceptions. First, as the Court previously stated, attorneys' fees which are attributable to the foreclosure action in state court are not compensable. The Court understands these entries to be outlined on pages 116–27 of the motion, totaling $42,997.89. Doc. #175-4, PageID #2574–85.

15

Second, there are a handful of entries which provide no information at all, other than the date and the user ID who submitted the billed time. Doc. #175, PageID #2501–02. Each of these 17 entries are for a fraction of an hour, but without any information describing the time, it is impossible to determine whether they are mistakes, duplicates, or legitimately billed time. For that reason, these entries, totaling $331.50, are not properly compensable.

Finally, as mentioned above, Plaintiff identified entries connected with dismissed parties and claims, totaling $17,692.92. Doc. #183. These entries are also non-compensable. When combined with the hours Plaintiff opted not to claim, the Court believes that the result adequately compensates Plaintiff for attorneys' fees.

In Conclusion, the Court's award of attorneys' fees is broken down as follows:

$367,329.75 (Total sum of attorneys' fees sought)

\- $42,997.89 (Foreclosure case)

\- $331.50 (Unknown entries)

\- $17,692.92 (Dismissed claims and parties)

$306,307.44 (Total award)

## IV. Conclusion

For the reasons set forth above, the Motion for Attorneys' fees is SUSTAINED IN PART and OVERRULED IN PART. Specifically, attorneys' fees are awarded in the amount of $306,307.44.

16

Date: September 11, 2025

WALTER H. RICE
UNITED STATES DISTRICT JUDGE